[Civ. No. 53217. First Dist., Div. Three. Oct. 6, 1981.]

CLEVELAND ARIO, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

James R. Jenner, Public Defender, and Leslie R. Chettle, Assistant Public Defender, for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Gloria F. DeHart and Kristofer Jorstad, Deputy Attorneys General, for Real Party in Interest.

OPINION

**BARRY-DEAL, J.**—Petitioner challenges the trial court's denial of his motion to dismiss special circumstance allegations in a murder prosecution. His contention is that the evidence presented at the preliminary

examination does not support the allegations that the two murders were committed while petitioner was "engaged in" the act of kidnaping. We agree with petitioner and therefore restrain the trial court from proceeding on those allegations.

The evidence presented at the preliminary examination showed that petitioner and two other men, including Alfred Dyer, visited the Oakland residence of Belinda Murray on the evening of November 8, 1980. The visit was social, but when Dyer awoke with his rings missing, the complexion of the evening changed. He accused another guest, Bennie Warren, of the theft and announced that he would kill Warren. Petitioner advised Dyer that if he killed Warren, he'd have to kill Ms. Murray, Ms. Murray's brother, and his girl friend as well. Dyer had petitioner bring Ms. Murray's brother downstairs, and the four potential victims were ordered into a car at gunpoint.

With petitioner driving, they proceeded to Redwood Road. On the way, petitioner suggested Ms. Murray be shot first because she was instrumental in having his brother sent to prison. When they stopped at Redwood Road, Dyer and accomplice Michael Jackson had the four get out and lie down. All four were shot as petitioner was turning the car around. Two survived to testify.

Petitioner has been charged with two counts of murder, two counts of attempted murder, and two counts of kidnaping in violation of Penal Code section 207. Among the "enhancement" allegations included in the information are two special circumstance allegations related to each murder count. As to each murder, it is alleged that "the defendant Cleveland Ario has in this proceeding been convicted of more than one offense of murder" (Pen. Code, § 190.2, subd. (a)(3)), and it is further alleged that the murder "was committed while the defendant was engaged in and was an accomplice in the commission, the attempted commission and the flight thereafter of a felony, to wit: Kidnapping, in violation of Section 207 of the Penal Code." (Pen. Code, § 190.2, subd. (a)(17)(ii).)

Petitioner contests only the kidnaping special circumstance allegations in the information. He relies principally upon the decision in *People v. Green* (1980) 27 Cal.3d 1 [164 Cal.Rptr. 1, 609 P.2d 468], as interpreted in *People v. Thompson* (1980) 27 Cal.3d 303 [165 Cal. Rptr. 289, 611 P.2d 883]. The pertinent portion of the *Green* opinion (*People v. Green, supra*, 27 Cal.3d at pp. 50-62) considered what inter-

pretation should be given to the phrase, "during the commission of a robbery," as it existed in former Penal Code section 190.2, subdivision (c)(3)(i) (Stats. 1977, ch. 316, § 9, p. 1258). The *Green* court first determined that substantial evidence supported the conclusion that a robbery had taken place when the defendant made his victim remove her clothes before the killing and removed her rings and purse after the killing, all with the purpose of destroying them as evidence. However, the *Green* court concluded as a matter of law that the murder had not taken place "during the commission of a robbery" within the meaning of the death penalty statute.

The *Green* court noted that the 1977 death penalty legislation was enacted to comply with the mandate of *Furman* v. *Georgia* (1972) 408 U.S. 238 [33 L.Ed.2d 346, 92 S.Ct. 2726] and *Gregg* v. *Georgia* (1976) 428 U.S. 153 [49 L.Ed.2d 859, 96 S.Ct. 2909], that the states provide a rational basis for distinguishing between those murderers who deserve to be considered for the death penalty and those who do not. (*People* v. *Green, supra*, 27 Cal.3d at p. 61.) The court concluded that the Legislature's goal "is not achieved ... when the defendant's intent is not to steal but to kill and the robbery is merely incidental to the murder ... because its sole object is to facilitate or conceal the primary crime.... To permit a jury to choose who will live and who will die on the basis of whether in the course of committing a first degree murder the defendant happens to engage in ancillary conduct that technically constitutes robbery or one of the other listed felonies would be to revive 'the risk of wholly arbitrary and capricious action' condemned by the high court plurality in *Gregg*. [Citation.]" (*People* v. *Green, supra*, 27 Cal.3d at pp. 61-62.)

Dicta in *People* v. *Thompson, supra*, 27 Cal.3d at pages 321-322, decided shortly after *Green*, suggests that the *Green* interpretation of "during the commission of" applies to the other specified felonies in former Penal Code section 190.2, subdivision (c)(3), which included kidnaping in violation of Penal Code sections, 207 or 209 (subd. (c)(3)(ii)).

■ The present death penalty provision, which applies to petitioner's case, uses the terminology, "while the defendant was engaged in ... the commission of, attempted commission of, or the immediate flight after committing or attempting to commit" the specified felonies, including kidnaping in violation of sections 207 and 209 (Pen. Code, § 190.2, subd. (a)(17)(ii)), instead of the words, "during the commission of." It seems clear, however, that the terms, "while ... engaged in" and "dur-

ing the commission of," should carry the same meaning. (Cf. *Jones* v. *Superior Court* (1981) 123 Cal.App.3d 160, 170 [176 Cal.Rptr. 430].)

In light of the foregoing, the kidnaping special circumstance allegations here may be sustained only if the evidence will support a reasonable inference that the kidnaping was for some purpose other than merely to facilitate the primary crime of murder. If it were merely incidental to the murder or ancillary to it, with no separate purpose, the rationale of *Green* prevents a determination that the murder was committed while the defendant was engaged in kidnaping.

The Attorney General argues that at this stage of the proceedings, the inference of a violation of Penal Code section 190.2, subdivision (a)(17)(ii) arises from the "evidence that the four victims were forced at gunpoint into the rear of a car and driven a substantial distance by petitioner and his cohorts before they were shot" and that this inference stands "*despite* the victims' testimony of defendant's express threats to kill before the kidnapping began." The trial court here took the same position, stating that "the issue of whether there was a kidnapping, or a kidnapping and a murder plot or the like can be submitted to the jury upon the proper factual context with the appropriate instructions."

The test applied to a magistrate's ruling is that the evidence is sufficient "if it shows 'reasonable or probable cause' for the commitment. It will do this, without regard to whether it might support ... [a] conviction ... if it provides 'some rational ground for assuming the possibility' that the [crime] was committed and that [the defendant] may be guilty of it. A reviewing court may not substitute its judgment for that of the magistrate as to the weight of the evidence, and every legitimate inference to be drawn from it must be drawn in favor of the information. [Citations.]" (*Ghent* v. *Superior Court* (1979) 90 Cal.App.3d 944, 955 [153 Cal.Rptr. 720].)

The only evidence concerning the interplay between kidnaping and murder is that the murder plan was settled at the house, and the transportation to Redwood Road was for the purpose of accomplishing the murders. In essence, the position of the Attorney General and the trial court is that at the preliminary examination stage the prosecution need not furnish evidence suggesting an intent which would satisfy *Green* because that inference can reasonably be inferred from the evidence of a forcible kidnaping. If the evidence concerning the murderers' intentions were ambiguous, there would be rational grounds for assuming either

that the kidnaping had its own purpose or that it was merely incidental to the murder. (See *Jones* v. *Superior Court, supra,* 123 Cal.App.3d, pp. 173-174.) Here, however, the evidence is not ambiguous. Only one reasonable inference can be drawn from Dyer's statement at the house that he would kill Warren, petitioner's statement that they all would have to be killed, and the conduct of herding them into the car for a drive to the execution site. That inference is that the kidnaping was incidental to the murders.

We have reached this conclusion after full briefing by the parties. An alternative writ would add nothing to the presentation already made and would cause undue delay in dismissal of these allegations. We therefore issue a peremptory writ in the first instance. (Code Civ. Proc., §§ 1088, 1105; *San Diego Wholesale Credit Men's Assn.* v. *Superior Court* (1973) 35 Cal.App.3d 458 [110 Cal.Rptr. 657]; *Goodenough* v. *Superior Court* (1971) 18 Cal.App.3d 692, 697 [96 Cal.Rptr. 165].)

Let a peremptory writ of prohibition issue restraining the Alameda County Superior Court from taking any further action on the allegations of violation of the provisions of Penal Code section 190.2, subdivision (a)(17)(ii) in the proceedings entitled People v. Cleveland Ario, No. 71881, other than to dismiss the allegations.

White, P. J., and Feinberg, J., concurred.

The petition of real party in interest for a hearing by the Supreme Court was denied December 30, 1981. Richardson, J., was of the opinion that the petition should be granted.