# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILLIAM CLARK,
        *Petitioner-Appellant,*

v.

JILL BROWN, Warden, California
State Prison at San Quentin,*
        *Respondent-Appellee.*

No. 02-99007

D.C. No.
CV-95-00334-DOC

ORDER
AMENDING
OPINION AND
DENYING
REHEARING AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted
February 17, 2005—San Francisco, California

Filed March 17, 2006
Amended May 30, 2006

Before: Dorothy W. Nelson, William A. Fletcher, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge William A. Fletcher

---

*Jill Brown is substituted for Jeanne S. Woodford, her predecessor as
Warden of San Quentin State Prison. *See* Fed. R. App. P. 43(c)(2).

5853

**COUNSEL**

Maria E. Stratton, Sean K. Kennedy and Mark R. Drozdowski, Office of the Federal Public Defender, Los Angeles, California, for the petitioner-appellant.

Bill Lockyer, Robert R. Anderson, Pamela C. Hamanaka, Keith H. Borjon and Scott A. Taryle, Office of the California Attorney General, Los Angeles, California, for the respondent-appellee.

## ORDER

This court's opinion filed March 17, 2006, and published at *Clark v. Brown*, 442 F.3d 708 (9th Cir. March 17, 2006) is amended as follows:

The last two lines of slip op. 2802 and the first line of 2803, replace the sentence:

"Not only was *Murtishaw* a non-capital special circumstance felony-murder case in which the Court was careful to distinguish *Green*, as just noted."

With:

"Not only was *Murtishaw* a non-special circumstance felony-murder case in which the Court was careful to distinguish *Green*, as just noted."

With this amendment, the panel has voted to deny the petition for rehearing. Judges Fletcher and Fisher have voted to deny the petition for rehearing en banc; and Judge Nelson so recommends.

The full court has been advised of the petition for rehearing en banc and no judge of the court has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing and the petition for rehearing en banc, filed April 27, 2006, are DENIED.

---

## OPINION

W. FLETCHER, Circuit Judge:

William Clark, a California death row inmate, appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus

petition asserting several constitutional errors related to his sentence. We hold that there were two interrelated due process violations in this case. First, we hold that the state trial court's failure to give a felony-murder special circumstance jury instruction based on the California Supreme Court's decision in *People v. Green*, 27 Cal. 3d 1 (1980), violated Clark's due process right to present a complete defense. Second, we hold that the California Supreme Court's retroactive application of a new interpretation of *Green* and of the felony-murder special circumstance statute, on direct review, violated Clark's due process right to fair warning that his conduct made him death-eligible. Finally, we hold that these violations were not harmless. We do not reach Clark's remaining challenges to his sentence. Our decision does not affect Clark's conviction for first-degree murder, his two convictions for attempted second degree murder, and his conviction for arson.

## I. Background

In the early morning hours of January 6, 1982, Clark threw gasoline into the house where David and Ava Gawronski and their infant daughter Sara were sleeping. He then ignited the gasoline by throwing highway flares into the house. David Gawronski suffered second- and third-degree burns over 90 percent of his body and died eight days later. Ava Gawronski was so seriously burned that she was hospitalized for 10 months. She ultimately lost her fingers and nose, and suffered additional permanent injuries. Sara, the baby, was rescued unharmed by a neighbor.

Clark surrendered to authorities and confessed the next day. He contended that his plan had been to set the fires in order to drive the family out of the house, and then to kill David Gawronski with a shotgun in front of Ava once the family was outside. Ava Gawronski had been Clark's therapist. A short time before the fires, she had discontinued Clark's counseling sessions against his wishes. Clark's stated purpose was

to cause her to suffer the same emotional pain that he claimed to have suffered when she discontinued his therapy.

Clark was charged with first-degree murder of David Gawronski, attempted first-degree murder of Ava and Sara Gawronski, and arson. The state also charged two special circumstances that would make Clark death-eligible: murder by means of explosive, and murder in the commission of a felony (arson).

The defense theory of the case was that while Clark intended to kill David Gawronski by means of his plan, he never intended to kill or physically injure Ava or Sara Gawronski. Clark took the stand at trial and admitted both the arson and intent to kill David Gawronski. However, he contested the attempted murder charges and contested the two special circumstances.

By contrast, the prosecution theory of the case was that Clark intended to kill the entire family in the house by means of the fires. The prosecution presented evidence at trial that Clark first set a fire in the dining room, thereby trapping David and Ava Gawronski in their bedroom, and then set fire to their bedroom.

Clark's defense counsel Charles English requested the then-standard jury instruction on the felony-murder special circumstance, California Jury Instruction (CALJIC) 8.81.17. This instruction contained language based on the California Supreme Court's decision in *People v. Green*, 27 Cal. 3d 1 (1980). *Green* and CALJIC 8.81.17 provided a narrowing construction of California's felony-murder special circumstance statute. Under *Green*, the State had to show that the murder was "committed in order to carry out or advance the commission of the crime" of arson, "or to facilitate the escape therefrom or to avoid detection" of the arson. It was not enough to show that the arson was "merely incidental" to the murder.

The prosecutor objected to the CALJIC instruction requested by Clark. Instead, he sought an instruction that simply tracked the language of the felony-murder special circumstance statute without adding the narrowing construction then required by *Green*. The language of the statute, and the prosecutor's requested instruction, required only that the murder have been committed while Clark "was engaged in" the commission or attempted commission of arson. *See* Cal. Penal Code § 190.2(a)(17)(viii) (1995) (current version at Cal. Penal Code § 190.2(a)(17)(H)). The trial court rejected the *Green*-based CALJIC instruction requested by Clark and gave the instruction requested by the prosecutor.

The jury convicted Clark of first-degree murder of David Gawronski, attempted second-degree murders of Ava and Sara Gawronski, and arson.[1] It also found both special circumstances true, thereby making Clark death-eligible. After seven days of further deliberation, the jury hung on the question of penalty and was excused. The State then retried the penalty question before a new jury. Clark represented himself during the penalty retrial. After four hours of deliberation, the second penalty jury returned a verdict of death.

On automatic appeal, the California Supreme Court struck the explosives special circumstance. *People v. Clark*, 50 Cal. 3d 583, 638-39 (1990). It affirmed Clark's conviction for the felony-murder circumstance, but only after substantially reinterpreting its earlier decision in *Green*. *Id.* at 606-09. It then affirmed Clark's death sentence. *Id.* at 638-39. The United States Supreme Court denied Clark's petition for certiorari. *Clark v. California*, 498 U.S. 973 (1990). The California Supreme Court dismissed Clark's first habeas petition for failure to state a claim and denied Clark's second habeas petition on procedural grounds. *In re Clark*, 5 Cal. 4th 750, 761, 799 (1993).

---

[1]Clark was also convicted of the unrelated charge of rape of his ex-wife. The rape conviction is not relevant to this appeal.

On December 13, 1995, Clark filed a petition for habeas corpus in federal district court, raising issues as to both the guilt and penalty phases of his trial. The district court denied the petition in its entirety, but granted *sua sponte* a Certificate of Appealability on Clark's felony-murder special circumstance claim. Clark has appealed only issues relating to his sentence.

We review de novo the district court's decision to grant or deny a 28 U.S.C. § 2254 habeas petition. *Douglas v. Woodford*, 316 F.3d 1079, 1085 (9th Cir. 2003). Because Clark filed his habeas petition before the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") of April 24, 1996, pre-AEDPA law applies. *See Woodford v. Garceau*, 538 U.S. 202, 207 (2003). Under pre-AEDPA law, the state court's findings of fact are "entitled to a presumption of correctness unless they are 'not fairly supported by the record.' " *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (quoting former 28 U.S.C. § 2254(d)(8)). We review questions of law de novo. *Gratzer v. Mahoney*, 397 F.3d 686, 690 (9th Cir. 2005). In pre-AEDPA cases, we also review de novo the state court's conclusion that a constitutional error was harmless. *Ghent v. Woodford*, 279 F.3d 1121, 1126 (9th Cir. 2002).

## II.   Analysis

Because the California Supreme Court struck the explosives special circumstance, the felony-murder special circumstance is all that makes Clark death-eligible. If the jury's guilty verdict on the felony-murder special circumstance is reversed, the death penalty must also be reversed.

Clark contends that the felony-murder special circumstance must be reversed for two interrelated reasons. First, he contends that the trial court's failure to give his requested jury instruction under *Green* violated due process under *California v. Trombetta*, 467 U.S. 479, 485 (1984), by unfairly depriving

him of "a meaningful opportunity to present a complete defense." Second, he argues that the California Supreme Court's expansion of *Green* and reinterpretation of the felony-murder special circumstance statute was an unforeseeable new interpretation of California law, and that the retroactive application of this new interpretation on appeal violated due process under *Bouie v. City of Columbia*, 378 U.S. 347, 362 (1964). We agree with both of Clark's contentions. Because we reverse the felony-murder special circumstance, we do not reach other issues raised by Clark, including his competence to waive counsel and represent himself during his second penalty trial.

## A. Failure to Give the *Green* Instruction

**[1]** The fact that a jury instruction violates state law is not, by itself, a basis for federal habeas corpus relief. "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "Federal habeas courts therefore do not grant relief, as might a state appellate court, simply because the instruction may have been deficient in comparison to the CALJIC model." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). On federal habeas, the issue is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). The burden on the habeas petitioner is "especially heavy" where, as here, the alleged error involves the failure to give an instruction. *Hendricks v. Vasquez*, 974 F.2d 1099, 1106 (9th Cir. 1992) (as amended) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1997).

**[2]** Due process requires that criminal prosecutions "comport with prevailing notions of fundamental fairness" and that "criminal defendants be afforded a meaningful opportunity to present a complete defense." *Trombetta*, 467 U.S. at 485. When habeas is sought under 28 U.S.C. § 2254, "[f]ailure to instruct on the defense theory of the case is reversible error

if the theory is legally sound and evidence in the case makes it applicable." *Beardslee v. Woodford*, 358 F.3d 560, 577 (9th Cir. 2004) (as amended); *see also Bradley v. Duncan*, 315 F.3d 1091, 1098 (9th Cir. 2002) ("[T]he right to present a defense would be empty if it did not entail the further right to an instruction that allowed the jury to consider the defense.") (internal quotation marks omitted); *Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 2000) (as amended) ("It is well established that a criminal defendant is entitled to adequate instructions on the defense theory of the case."). A habeas petitioner must show that the alleged instructional error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted); *see also Beardslee*, 358 F.3d at 578.

[3] Clark was charged with the felony-murder (arson) special circumstance under former California Penal Code § 190.2(a)(17). This special circumstance provided for the death penalty or life imprisonment without the possibility of parole if "[t]he murder was committed while the defendant was engaged in or was an accomplice in the commission of, attempted commission of, or the immediate flight after committing or attempting to commit the following felonies: . . . (viii) Arson in violation of Section 447." Cal. Penal Code § 190.2(a)(17)(viii) (amended 1995).[2] In *People v. Green*, 27

---

[2]Both *People v. Green*, 27 Cal. 3d 1 (1980), and *People v. Thompson*, 27 Cal. 3d 303 (1980), construe an earlier version of the felony-murder special circumstance that required the murder to have been "committed *during* the commission or attempted commission" of five enumerated crimes. Cal. Penal Code § 190.2(c)(3) (1977) (emphasis added). By the time of Clark's trial, the statute had been amended to provide that the special circumstance exists if "[t]he murder was committed while the defendant was *engaged in* or was an accomplice *in the commission of*, attempted commission of, or the immediate flight after committing or attempting to commit" nine enumerated felonies. Cal. Penal Code § 190.2(a)(17)(viii) (amended 1995) (emphasis added). California case law does not draw a substantive distinction between "during the commission" and "engaged in the commission of," and we treat them as having an identical meaning for purposes of this case.

Cal. 3d 1, 61 (1980), the California Supreme Court narrowed the felony-murder special circumstance statute in order to comply with the requirement of *Furman v. Georgia*, 408 U.S. 238 (1972), and *Gregg v. Georgia*, 428 U.S. 153 (1976), that "each special circumstance provide a rational basis for distinguishing between those murderers who deserve to be considered for the death penalty and those who do not." *See also Williams v. Calderon*, 52 F.3d 1465, 1476 (9th Cir. 1995) (explaining that *Green*'s narrowing construction was added "out of constitutional necessity, not mere state law nicety," for the special circumstance would otherwise "run afoul of the requirements" of *Furman* and *Gregg*).

**[4]** In *Green*, the California Supreme Court wrote that the felony-murder special circumstance statute "expressed a legislative belief that it was not unconstitutionally arbitrary to expose to the death penalty those defendants who killed in cold blood in order to advance an *independent felonious purpose*[.]" 27 Cal. 3d at 61 (emphasis added). The California Supreme Court explained that there is no "independent felonious purpose" within the meaning of the statute when the felony is "incidental" to the murder. *Id. Green* held that a felony whose "sole object is *to facilitate* or conceal *the primary crime*" of murder is "incidental," and therefore does not qualify a defendant for the death penalty under the special circumstance statute. *Id.* (emphasis added).

In *Green* itself, a husband killed his wife and subsequently took her clothes, rings and purse in order to conceal her identity. *Id.* at 62. The California Supreme Court held that this felonious robbery of the wife's belongings was insufficient to support a felony-murder special circumstance conviction because Green did not commit the robbery for a reason independent of the murder, and then commit the murder to advance the purpose of committing the robbery. Rather, Green committed the robbery in order to facilitate or conceal the murder. In other words, the robbery was "incidental" to the murder. The California Supreme Court summarized its

rationale in *Green*: The felony-murder special circumstance had not been proved because the crime "was not in fact a murder in the commission of a robbery but the exact opposite, a robbery in the commission of a murder." *Id.* at 60.

Clark took the stand at trial. He testified that he had set the fires as a means to the end of killing David Gawronski in front of Ava Gawronski, and that he had no intention of killing anyone else. Clark testified that his purpose when he arrived at the house was to set two fires, one at the back of the house and one in the dining room area, in order to force the family out the front door. He testified that he first threw a bucket of gasoline into what he thought was a back room of the house. When he heard screaming from the room, he realized it was in fact David and Ava Gawronski's bedroom. Even though his plan had now gone awry, he threw a flare into the bedroom to ignite the gasoline. He testified that he then went to the patio at the side of the house and threw a second bucket of gasoline into the dining room, either through a pane of glass or through a glass door. He then threw a second flare into the house, igniting the gasoline in the dining room.

Clark testified that when he threw the flare into the bedroom, "I knew that they were in there; and it was apparent to me that I was not going to — well, I'd realized at that point that I was not going to do what I'd set out to do specifically. I guess if I had a plan at that point, my plan was simply to carry out whatever other steps I had already preplanned and that was it. It wasn't working. I couldn't take it back. I couldn't change it. So I simply played out what I had left." Clark testified that he then realized that his plan "was no longer operable" because David Gawronski "wasn't going to come out the front door." Clark returned to his car, put his shotgun in the trunk, and drove away.

On direct examination, defense counsel English asked Clark, "Was the fire incidental to your intent to murder David Gawronski?" The prosecutor objected. The trial court sus-

tained the objection because in its view, the question called for a "self-serving" answer regarding Clark's intent, which the court three times stated was "an ultimate fact" to be decided by the jury. The court emphasized that this ultimate fact was "to be decided by the jury based on the totality of the evidence; whether or not his conduct was in fact primary or incidental."

After the court's ruling on the objection, English continued his direct examination:

> Q: What was your primary goal in going to the [Gawronski house] that evening?
>
> A: To shoot David in front of Ava.
>
> Q: And in relation to that primary objective, what relationship did the fire have?
>
> A: The fire was a tactic to achieve an overall strategic goal, if you want to use those terms. It was a means to an end.

These questions (and answers) were designed to show that Clark had no independent felonious intent within the meaning of *Green* because the arson was incidental to his primary intent to kill David Gawronski. That is, the arson was "incidental" because it was intended to "facilitate" the crime of murder. *See Green*, 27 Cal. 3d at 61.

In support of his theory that Clark intended to kill the entire Gawronski family in the house by means of the fires, the prosecutor sought to prove that Clark trapped David and Ava Gawronski in the bedroom by first setting fire to the dining room rather than the bedroom. Ava Gawronski testified to intense heat emanating from the dining room before there was a fire in the bedroom. Thomas Derby, a Los Angeles Fire Department expert, testified that the fire in the dining room

was started first, and that, based on burn patterns and the upright position of a bucket inside the dining room, gasoline was distributed in the house by someone who had been inside the house. Carl Rasmusson, another Los Angeles Fire Department expert, also testified that the evidence tended to show that the dining room fire was started first, and that someone had been inside the house to set that fire.

At the close of Clark's trial, defense counsel English requested a jury instruction based on CALJIC 8.81.17. The second paragraph of the instruction had been added in light of the *Green* decision. The entire requested instruction read as follows:

> To find that the special circumstance, referred to in these instructions as murder in the commission of an arson is true, it must be proved:
>
> 1. That the murder was committed while the defendant was engaged in the commission of an arson; and,
>
> 2. That the murder was committed in order to carry out or advance the commission of the crime of arson or to facilitate the escape therefrom or to avoid detection. In other words, the special circumstance referred to in these instructions is not established if the arson was merely incidental to the commission of the murder.

The prosecutor argued that paragraph 2, the *Green*-based instruction, was inappropriate "simply because the arson was not incidental." The trial court agreed with the prosecutor. Reasoning that the *Green* instruction would be "confusing to the jury," the court declined to define "incidental" and gave the CALJIC instruction without paragraph 2.

English protested the trial court's ruling, arguing that the failure to give the *Green* instruction would critically undermine the defense theory of the case. He said:

> This case has been tried from day one about a *Green* instruction. We have talked about *Green*. There was an enormous amount of questioning about the intent and how the intent was to be done and what the arson had. [sic] We had days of testimony about that. And for the Court at this point to say there is not sufficient evidence to even let the jury consider it I submit is completely erroneous . . . .

The transcript bears out English's statement that Clark's defense had depended from the beginning on securing a *Green* instruction. In his opening argument, English conceded guilt on everything except the attempted murder and special circumstances charges. English told the jury that "[t]he question that you are really going to have to decide and that will cause you the most time and the most effort, and the defense will put most of their emphasis on, is the question of whether the special circumstances apply." He further explained that, in the context of the felony-murder special circumstance, the words "engaged in the commission of an arson" have "specific and limited application and the Court, of course, will be instructing you on those."

The jury returned a verdict finding Clark guilty of first-degree murder of David Gawronski, attempted second-degree murders of Ava and Sara Gawronski, and arson. It also found Clark guilty of the felony-murder special circumstance.

On automatic appeal, the California Supreme Court substantially reinterpreted *Green*, as we describe more fully below. Under the Court's new interpretation of *Green*, Clark was not guilty of the felony-murder special circumstance if he intended to kill David Gawronski by committing arson to kill him inside the house. But Clark was guilty of the special cir-

cumstance if he had "independent, albeit concurrent, goals" of committing arson *and* killing David Gawronski. *Clark*, 50 Cal. 3d at 609. Surprisingly, under this new view of *Green*, Clark was not guilty of the felony-murder special circumstance if the *prosecutor's* version of the facts were believed. Clark could be guilty of the special circumstance only if *his own* version of the facts were believed — under which he might have had, in the California Supreme Court's words, the "independent, albeit concurrent, goals" of committing arson and killing David Gawronski. *Id.*

Because evidence had been presented — by the *prosecutor* — under which Clark could have been found not guilty of the special circumstance under the California Supreme Court's new interpretation of *Green*, the Court held that it had been "error" not to give an "instruction based on *Green*" at trial. But the Court held, under its new view of *Green*, that the error had been harmless. *Clark*, 50 Cal. 3d at 609. The error was harmless, in the Court's view, because there was "overwhelming" evidence supporting Clark's contention that he had originally intended that the fires drive the family out of the house. *Id.* The Court wrote:

> [D]efendant's own testimony, his extrajudicial statements made before and after the offense, and the shotgun and ammunition found in the trunk of his rental car after the offense, afford overwhelming evidence that when he commenced the arson his intent was to start a fire that would drive the family out of the home. At that time his purpose was not to kill David Gawronski.

*Id.*

**[5]** We hold that under California's felony-murder special circumstance statute, as interpreted in *Green*, both at the time of his crime and at the time of his trial, Clark was entitled to an instruction that told the jury he was not guilty of the spe-

cial circumstance if the arson was a felony whose "sole object [was] to facilitate . . . the primary crime" of murder. *Green*, 27 Cal. 3d at 61. Clark conceded that he had set the fires at the Gawronski house, and he conceded that he intended to kill David Gawronski. Under Clark's theory of the case, he did not have an "independent felonious purpose" in committing arson. *Id.* Rather, he set the fires only for the purpose of driving David Gawronski out of the house so that he could shoot him. He was therefore entitled, both on his own and on the prosecutor's theories of the case, to the *Green* instruction contained in paragraph 2 of CALJIC 8.81.1.

The next question is whether Clark was entitled, under the due process clause, to that instruction. We now turn to that question.

### B.   Retroactive Application

On appeal of Clark's conviction and sentence, the California Supreme Court abandoned its earlier interpretation of the California felony-murder special circumstance statute in *Green*. Under its new interpretation of *Green*, the Court held that the trial court erred in not giving the instruction Clark had requested, but on a different ground than that argued by Clark. The Court then held the error harmless based on its new interpretation of the statute. Clark contends that the California Supreme Court's new interpretation violated due process by retroactively changing the felony-murder special circumstance statute to reach his conduct. We agree.

On appeal in Clark's case, the California Supreme Court wrote:

> In *People v. Green*, . . . , 27 Cal.3d 1, a case in which the "felony murder" special circumstance of the 1977 death penalty law was construed, this court held that the special circumstance was inapplicable to cases in which the defendant intended to commit

murder and only incidentally committed one of the specified felonies while doing so. We explained in *People v. Robertson* (1982) 33 Cal.3d 21, however, that when the defendant has an independent purpose for the commission of the felony, and it is not simply incidental to the intended murder, *Green* is inapplicable.

Setting a fire to drive the occupants out of a home would establish an independent purpose since the fire is not intended to kill. Thus, if defendant's testimony and statements are believed, the death of David Gawronski fell squarely within the purpose of the felony-murder-arson special circumstance. The victim died in an arson fire set by defendant for a purpose other than causing his death. As in *People v. Robertson*, . . . 33 Cal.3d 21, the underlying felony, here arson, was not simply incidental to the intended murder of David Gawronski, which was to be committed by another means independent of the arson. The relation between defendant's intent to murder David Gawronski, and his intent to burn the Gawronski home, would not invoke the *Green* rule since defendant had independent, albeit concurrent, goals.

There was also circumstantial evidence, however, to support a conclusion, and indeed the prosecutor argued and the jury apparently agreed, that when defendant actually set fire to the gasoline in the Gawronski home, regardless of the order in which the rooms were torched, defendant intended to kill the family members. The trial court erred, therefore, in refusing to give defendant's requested instruction based on *Green* that the arson special circumstance could not be found true unless defendant had a purpose for commission of the arson independent of causing the death of David Gawronski.

By any standard the error was harmless. We recognize that the jury verdicts finding defendant guilty of the attempted second degree murder of Ava Gawronski and Sara Gawronski confirm that the jury believed defendant ignited the gasoline vapor with the intent thereby to kill the family members in the ensuing fire. Nonetheless, defendant's own testimony, his extrajudicial statements made before and after the offense, and the shotgun and ammunition found in the trunk of his rental car after the offense, afford overwhelming evidence that when he commenced the arson his intent was to start a fire that would drive the family out of the home. At that time his purpose was not to kill David Gawronski. His belated realization that the Gawronski bedroom was occupied, and his resolution to proceed with his plan nonetheless, does not negate the evidence that he had a purpose independent of causing the death of David Gawronski in his commission of arson.

In light of that evidence, omission of the requested instruction was not prejudicial and the felony-murder-arson special-circumstance allegation was properly found true.

*Clark*, 50 Cal. 3d at 608-09 (footnote omitted).

Justice Broussard, joined by Justice Mosk, dissented from the Court's reinterpretation of *Green*. *Id.* at 642-44. Justices Broussard and Mosk agreed with the Court that under the prosecutor's theory of the case — in which Clark intended that the fires kill the entire family in the house — *Green* required the jury to acquit Clark of the felony-murder special circumstance. But they disagreed with the Court's conclusion that under Clark's theory of the case — in which Clark intended that the arson drive the family out of the house so that he could kill David Gawronski — *Green* allowed a conviction. After quoting from *Green*, Justice Broussard wrote:

> Thus if, as here, the defendant's purpose in setting the fire is not to destroy property, but to drive the intended victim to a place where the defendant can more easily kill him, the felony lacks a purpose *independent* from the murder, and cannot support a felony-murder special circumstance.

*Id.* at 643 (Broussard, J., dissenting) (emphasis in original).

**[6]** As indicated by Justice Broussard's dissent, the California Supreme Court substantially reinterpreted *Green* in Clark's appeal. Under *Green*, if the sole purpose of the felony was to "facilitate" the commission of the murder, the felony was "incidental." An incidental felony did not qualify a defendant for the death penalty under the felony-murder special circumstances statute. Rather under *Green,* a felony qualified under the special circumstance statute only if two requirements were satisfied: (1) the felony, such as robbery or arson, must have been committed for a purpose "independent" of the murder, and (2) the murder must have been committed in order to advance that "independent felonious purpose." 27 Cal. 3d at 61. The example given by the Court in *Green* of a felony murder qualifying as a special circumstance was the murder of a witness to, or victim of, a holdup, kidnaping or rape. *Id.* In the Court's example, the holdup, kidnaping or rape was the "independent" felony (requirement one). The murder of the witness or victim was committed in order to advance the independent felonious purpose of the holdup, kidnaping or rape (requirement two).

**[7]** On appeal in *Clark*, the California Supreme Court significantly changed the first requirement and entirely dispensed with the second. The Court changed the first requirement by expanding the definition of an "independent" purpose to include a concurrent purpose that was not — in any ordinary sense of the term, and, more important, in the sense used in *Green* — a purpose "independent" of the murder. On the prosecutor's theory of the case, Clark intended to

kill the entire family, including David Gawronski, directly by means of the fire. On Clark's theory of the case, he intended to kill David Gawronski indirectly by means of the fire, driving him out of the house so he could shoot him. On either theory, the arson was not "independent" of the murder; rather, under both theories, the arson was a means to kill David Gawronski.

The Court dispensed entirely with the second requirement that the murder have the purpose of advancing the "independent felonious purpose" of the arson. There was never any contention — by either the prosecutor or Clark — that Clark murdered David Gawronski in order to advance his purpose of committing arson.

[8] Thus, in holding that Clark's arson was not "incidental" to the murder of David Gawronski, the California Supreme Court dramatically altered the interpretation of the special circumstance statute that it had previously provided in *Green*. Under the California Supreme Court's new interpretation of the felony-murder special circumstance statute, the *Green* instruction should have been given, but not for the reason advocated by Clark. Rather, according to the Court in *Clark*, the *Green* instruction should have been given to allow the jury to acquit on the special circumstance charge if it agreed with the prosecutor's theory of the case — that is, if it agreed that the fires had been set in order to kill the entire family in the house. If those had been the facts, the Court wrote, the arson would not have qualified as a special circumstance. But the Court held that the failure to give the *Green* instruction had been harmless because there was "overwhelming" evidence that Clark intended that the fires drive the family out of the house. 50 Cal. 3d at 609. Under the Court's new interpretation of the statute, Clark's purpose of driving the family out of the house now qualified as an "independent, albeit concurrent" purpose. *Id.*

[9] An unforeseeable judicial enlargement of a criminal statute, applied retroactively, violates the federal due process

right to fair warning of what constitutes criminal conduct. *See Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964); *see also Rogers v. Tennessee*, 532 U.S. 451, 459 (2001) (*Bouie* articulated a "basic and general principle of fair warning"); *LaGrand v. Stewart*, 133 F.3d 1253, 1260 (9th Cir. 1998) ("[T]he Due Process Clause . . . protects criminal defendants against novel developments in judicial doctrine."). A judicial construction of a statute may violate due process if the defendant was "unfairly surprised in a way that affected his legal defense." *Darnell v. Swinney*, 823 F.2d 299, 301 (9th Cir. 1987). The "crucial test" is "whether the construction actually given the statute was foreseeable." *McSherry v. Block*, 880 F.2d 1049, 1053 (9th Cir. 1989) (citation omitted); *see also Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989) ("An unforeseeable, albeit legitimate, construction of a state law by the courts may not be retroactively applied to a defendant."). A new judicial interpretation of a special circumstance provision can be challenged under *Bouie* because "[s]pecial circumstances that make a criminal defendant eligible for the death penalty operate as 'the functional equivalent of an element of a greater offense.' " *Webster v. Woodford*, 369 F.3d 1062, 1068 (9th Cir. 2004) (as amended) (quoting *Ring v. Arizona*, 536 U.S. 584, 609 (2002)).

Based on our decision in *McSherry v. Block*, the State argues that *Bouie* is inapplicable because Clark had fair warning that his conduct was criminal. In *McSherry*, we distinguished *Bouie* on the ground that "there was no danger that a person pursuing what would otherwise be purely innocent behavior could be ensnared by the statute with no warning whatsoever." 880 F.2d at 1056. We wrote, "[I]t simply cannot be said that appellant had no fair warning that the particular conduct in which he was engaged was punishable." *Id.*; *see also Darnell*, 823 F.2d at 301 (holding that there was no *Bouie* violation where defendant "clearly had fair warning that his contemplated conduct — attempting to possess stolen property — was criminal"). We disagree with the State's argument, for applying *McSherry*'s rationale to the retroactive

application of an unforeseeable modification of a special circumstance statute would be both unworkable and contrary to *Bouie*.

Because a felony-murder special circumstance necessarily involves conduct that is criminal, acceptance of the State's argument would mean that no judicial expansion of a death-qualifying special circumstance could ever be challenged under *Bouie* on retroactivity grounds. But *Bouie* itself states that a prohibited ex post facto law either "makes an action done before the passing of the law, and which was innocent when done, criminal" or "*aggravates a crime, or makes it greater than it was*, when committed." 378 U.S. at 353 (emphasis added) (citation omitted). "If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction." *Id.* at 353-54. In *Webster*, we implicitly — but clearly — rejected the State's suggested application of *McSherry* to special circumstance statutes. Without once suggesting that *Bouie* was inapplicable because the behavior in question was inherently criminal, we conducted a thorough *Bouie* analysis of a death-qualifying special circumstance statute to determine whether it had been improperly expanded and retroactively applied. 369 F.3d at 1073-75.

"The beginning point for a *Bouie* analysis is the statutory language at issue, its legislative history, and judicial constructions of the statute." *Id.* at 1069. The statute under which Clark was sentenced provided simply that the murder must be committed "while the defendant was engaged in or . . . in the commission of, attempted commission of, or the immediate flight after committing or attempting to commit" arson. Cal. Penal Code § 190.2(a)(17)(viii) (amended 1995). Broad statutory language generally precludes a *Bouie* challenge. *See McSherry*, 880 F.2d at 1052 ("[T]he very ambiguity that exists in this statute is, in part, what saves appellant's conviction."). If the California Supreme Court's decision in *Clark*

interpreting the felony-murder special circumstance statute had been written on a clean slate, it would not constitute a due process violation, or indeed anything close to it. In that event, there could have been no federal constitutional objection to the Court's interpretation of the statute, for the California Supreme Court is the final arbiter of the meaning of its state's statutes. But the Court was not writing on a clean slate, for it had previously narrowed the felony-murder special circumstance statute in *Green*.

An established part of our foreseeability inquiry under *Bouie* is whether prior judicial interpretations have "narrowed the clear terms of the statute[ ] to [a defendant's] benefit" before the commission of the crime. *LaGrand*, 133 F.3d at 1260. In examining judicial interpretations of California's special circumstance statute, we give "primacy to controlling decisions of the California Supreme Court, but must also consider intermediate appellate court rulings to the extent they offer predictive value in determining whether a particular construction was unexpected or unforeseen." *Webster*, 369 F.3d at 1070 ("lying in wait" special circumstance is a "specific California statute[ ], with a long history of California judicial construction"). Because the *Bouie* analysis focuses on notice to the defendant, we look only to cases decided before the crime was committed. *See LaGrand*, 133 F.3d at 1261 n.2.

The decisions of the California appellate courts indicate that, at the time Clark committed his crimes, *Green*'s interpretation of the felony-murder special circumstance statute was well-established, and that the California Supreme Court's new interpretation of that statute in *Clark* was unforeseeable. None of the three relevant, or possibly relevant, cases decided between the date of the Court's decision in *Green* (April 24, 1980) and the date of Clark's crime (January 6, 1982) undermined *Green*'s holding. Two were felony-murder special circumstance cases that clearly followed *Green*. The third, upon which the State relies, was a simple felony-murder case that had no bearing on a special circumstance case.

In *People v. Thompson*, 27 Cal. 3d 303, 325 (1980), the California Supreme Court held that there was insufficient evidence to support robbery and burglary special circumstances. The defendant in *Thompson* had broken into a house and had held a male and a female occupant at gunpoint. He purported to be seeking money and valuables, but when they were offered he did not take them. After forcing the two occupants to the living room, he stated, "You know why I'm here and you know who sent me." He then fired three shots into each of them, killing the man and wounding the woman. He left the house with the keys to the man's car. *Id.* at 310-11. He took no other property. *Id.* at 323.

The Court spent three paragraphs describing its then-recent decision in *Green. Id.* at 321-22. It held that there was insufficient evidence to support a conviction for theft, or intended theft, of anything but the car keys. *See id.* at 323-24. The Court held that the theft of the keys was not an independent felony within the meaning of *Green* because it was most reasonably seen as a means of facilitating the defendant's escape. Noting that the defendant had arrived at the house on foot, the Court wrote, "[H]e had a motive to take a car simply to effect his getaway from the shootings he intended; and the fact that his first demand for the car was made just prior to the shootings suggests that this was indeed his reason for demanding the car keys." *Id.* at 324. The Court therefore concluded that the evidence was "insufficient to establish that the crime . . . was 'in fact a murder in the commission of a robbery [rather than] the exact opposite, a robbery in the commission of a murder.' " *Id.* at 325 (quoting *Green*, 27 Cal. 3d at 60) (bracketed language in original) (footnote omitted). There was no discussion in *Thompson* of concurrent purposes.

In *Ario v. Superior Court*, 124 Cal. App. 3d 285, 287 (1981), a California Court of Appeal granted a writ preventing the trial court from proceeding on allegations of a kidnaping-murder special circumstance. The defendant had transported the victims from their home to another site in order to murder

them. *See id.* at 289. The court held that a felony-murder special circumstance could not be sought where the kidnaping was "for the purpose of accomplishing the murders" and hence "incidental" to the murders. *Id.* at 289-90. As in *Thompson*, the crucial question was whether the defendant had a "separate purpose" for committing the felony "other than merely to facilitate the primary crime of murder." *Id.* at 289. There was no discussion in *Ario* of concurrent purposes.

Finally, the state relies on the California Supreme Court's decision in *People v. Murtishaw*, 29 Cal. 3d 733 (1981). *Murtishaw* involved the felony-murder rule rather than the felony-murder special circumstance statute. The difference between the two is significant. The felony-murder rule broadens criminal liability, imposing a kind of vicarious liability for murders that occur during the commission of a felony. A defendant may be convicted of murder under the felony-murder rule if he is involved in the commission of a felony during which a murder occurs, even if he does not do the killing. The Court in *Murtishaw* invoked this definition of felony murder when it wrote: "[T]he prosecution may seek to prove [the charge of felony murder] by showing that the homicide occurred during the commission of an enumerated felony." *Id.* at 751. The felony-murder special circumstance statute, by contrast, narrows criminal liability, allowing capital punishment only for a certain restricted class of murders. Under the felony-murder special circumstance statute, as defined in *Green*, a defendant is not death-eligible for ordinary felony murder. Rather, he is death-eligible only if the murder advances an independent felonious purpose, such as the murder of a witness to a felony in order to avoid identification.

In *Murtishaw*, the Court held that there was sufficient evidence to support a felony-murder conviction because the jury could have concluded that the defendant acted with the "concurrent goals of killing the victims and taking their car." *Id.* at 752. In a footnote, the Court in *Murtishaw* distinguished *Green* by explaining that "the theft here was not ancillary to

the murder, but if [the witness's] testimony is believed, a concurrent objective." *Id.* at 752 n.13. The Court had been careful to state that the issue in *Murtishaw* was first-degree felony murder, not felony-murder special circumstance. *Id.* at 750-51. Footnote 13, just quoted, insured that the reader understood that the two were different.

Felony murder, without more, does not make a defendant eligible for the death penalty. California's felony-murder rule is significantly broader than its felony-murder special circumstance statute. Because the death penalty is not at stake in a simple felony-murder case, the requirements of *Furman* and *Gregg* (which were responsible for the California Supreme Court's narrowing of the felony-murder special circumstance statute in *Green*, *see* 27 Cal. 3d at 61-62) are not in play. The Court's holding in *Murtishaw* that the defendant's concurrent objectives to murder the victims and steal their car was sufficient to support a verdict of felony murder thus has no bearing on *Green*.

Footnote 13 in *Murtishaw* was not a fair warning that the California Supreme Court would expand *Green*'s definition of felony-murder special circumstance in deciding Clark's case. Not only was *Murtishaw* a non-special circumstance felony-murder case in which the Court was careful to distinguish *Green*, as just noted. In addition, the Court did not cite *Murtishaw* in *People v. Robertson*, 33 Cal. 3d 21 (1982), a case decided a year after *Murtishaw,* in which it applied *Green*. Nor did the Court cite *Murtishaw* in *Clark* itself.

The only case cited by the California Supreme Court in *Clark* in support of its new interpretation was the *Robertson* case, just mentioned. Clark committed his crime in January of 1982. *Robertson* was decided in December of that year. The Court's very citation of *Robertson* in *Clark* helps show that *Clark* was an unforeseeable departure from *Green*. The Court in *Clark* wrote:

> We explained in *People v. Robertson* (1982) 33
> Cal.3d 21, however, that when the defendant has an
> independent purpose for the commission of the fel-
> ony, and it is not simply incidental to the intended
> murder, *Green* is inapplicable.

50 Cal.3d at 608.

*Robertson* was a capital case in which the defendant raped
and killed two women, and stole their underwear for his "col-
lection." 33 Cal. 3d at 33. When the defendant was arrested,
the underwear of several women (not limited to that of the
two victims) was found concealed under his bed. *Id.* at 32.
The Court wrote:

> [T]he jury could reasonably have concluded . . . that
> from the outset of both incidents defendant harbored
> the intent to steal some of the victims' underwear or
> other personal property as well as the intent to
> assault them sexually. Unlike in *Green*, such an
> intent to steal was entirely independent of the mur-
> ders and was not planned simply as a means of con-
> cealing the killings. Because the jury could . . .
> reasonably have found that defendant killed both
> victims when he became afraid that they would
> report his intended crimes, this case appears to fall
> within the class of cases as to which — under
> *Green*'s analysis — the "felony-murder" special cir-
> cumstance of the 1977 statute may properly apply.

33 Cal. 3d at 52. That is, in accordance with the standard
*Green* analysis, the jury could have concluded in *Robertson*
that the defendant killed his victims in order to further his
independent felonious purpose of stealing their underwear or
other personal belongings. Thus, far from giving fair warning
of a substantial modification of *Green*, *Robertson* cited *Green*
and applied it in an entirely predictable way.

**[10]** To evaluate foreseeability, we may also look to the CALJIC instruction in place at the time of trial. In *Webster*, we held that the fact that the challenged jury instruction in that case tracked the standard CALJIC instruction was "one of the strongest indications" of foreseeability. 369 F.3d at 1075. We wrote, "Given the existence and wide publication of this standard instruction, it was foreseeable that it would be applied." *Id.* As described above, paragraph 2 of CALJIC 8.81.17 had specifically incorporated *Green*'s holding. CALJIC 8.81.17 has since been amended to include a comment stating that "[c]oncurrent intent to kill and commit an independent felony will support a felony-murder special circumstance." But the two cases cited in support of this comment are *Clark* and *People v. Raley*, 2 Cal. 4th 870, 903 (1992), a case relying on *Clark*. No pre-*Clark* case is cited. There is thus no indication whatsoever in CALJIC 8.81.17, as it existed at the time of Clark's trial, that the concept of "concurrent" purposes in the context of special circumstance predated the California Supreme Court's decision in *Clark*. And there is a strong indication from the later-adopted version of CALJIC 8.81.17, as evidenced by its citation to *Clark* and *Raley* in the accompanying comment, that the concept of "concurrent" purposes did not exist prior to *Clark*.

That the California Supreme Court's new interpretation of the arson-murder special circumstance statute was unforeseeable is demonstrated by the deeply ironic result it produced. Clark's trial strategy had been to prove precisely what the Court now held was a special circumstance making him eligible for the death penalty. The prosecutor had tried to show that Clark had tried to kill the entire family, including David Gawronski, in the house by means of the fires. By contrast, Clark's experienced and skilled trial counsel, Charles English, had tried to show that Clark set the fires in order to drive the family out of the house. Now, under the Court's new interpretation of *Green*, what Clark had been at pains to show at trial was precisely what defeated his appeal.

**[11]** We conclude from the foregoing that the California Supreme Court's new interpretation of the felony-murder special circumstance in Clark's case was a substantial change from its prior interpretation of that statute in *Green*. This new interpretation and its retroactive application were "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." *Rogers*, 532 U.S. at 461 (quoting *Bouie*, 378 U.S. at 354). We therefore hold that the California Supreme Court's retroactive application of its new interpretation of the felony-murder special circumstance statute in Clark's case violated due process.

### C.   Harmless Error

We have now concluded that the failure to give the instruction in paragraph 2 of CALJIC 8.81.17 violated due process under *Trombetta* and *Bouie*. The final question is whether these violations were harmless. Under *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), habeas corpus relief may be granted only if the failure to give the *Green* instruction "had a substantial and injurious effect or influence in determining the jury's verdict."

The instruction given to the jury simply echoed the words of the felony-murder special circumstance statute. The instruction provided, without elaboration or narrowing, that "it must be proved . . . [t]hat the murder was committed *while the defendant was engaged in the commission* or attempted commission *of an arson*." (Emphasis added.) The jury was not told that the arson must not have been "incidental" to the murder within the meaning of *Green*.

**[12]** If the jury had been properly instructed under *Green*, there is a reasonable probability that it would have concluded that the arson was "incidental" and that the felony-murder special circumstance therefore was not true. *See Belmontes v. Brown*, 414 F.3d 1094, 1139 (9th Cir. 2005) (construing *Brecht* to require "a reasonable probability" that the jury

would have reached a different verdict). Clark presented substantial evidence from which the jury could have concluded that he intended to set fire to the house to drive the family outside so that he could shoot David Gawronski in front of Ava Gawronski. It is fairly clear that the jury accepted Clark's version of the facts, for it found him guilty of attempted *second-degree* murders of Ava and Sara Gawronski. If the jury had believed the prosecutor's version of the facts — that Clark set the fires in order to kill the entire family in the house — it would have returned a verdict of attempted *first-degree* murders of Ava and Sara Gawronski. We are reinforced in this view of the evidence by the California Supreme Court's statement that the evidence supporting Clark's contention that when he set the fires he intended to drive the family out of the house — was "overwhelming." *Clark*, 50 Cal. 3d at 609.

**[13]** We therefore hold that the failure to give the *Green*-based instruction contained in paragraph 2 of CALJIC 8.81.17 "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

## Conclusion

**[14]** We hold that there were two interrelated due process violations in this case: first, the trial court's refusal to give the *Green*-based instruction, and, second, the California Supreme Court's retroactive application of its unforeseeable new interpretation of *Green.* We further hold that these violations were not harmless. We therefore reverse the district court's denial of Clark's petition for habeas corpus. We remand to the district court with instructions to grant relief with respect to his death sentence.

Clark's convictions for the first-degree murder of David Gawronski, for the attempted second-degree murders of Ava and Sara Gawronski, and for arson are unaffected by our decision.

**REVERSED and REMANDED.**